UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DENVER JONES                                              CIVIL ACTION

v.                                                        NO. 16-1850

MY INVESTMENTS LLC OF MS, ET AL.                          SECTION "F"


ORDER AND REASONS

Before the Court is My Investments LLC of Mississippi's motion to dismiss.  For the reasons that follow, the motion is GRANTED.

**Background**

This lawsuit for prospective equitable relief and attorney's fees arises from Denver Jones's allegations that he tripped and fell over a shower stool in the middle of the bathroom in a hotel room in the Candlewood Suites of Slidell Northshore.  Mr. Jones, who is blind, alleges that the presence of the stool in the middle of the bathroom created an architectural barrier in violation of the Americans with Disabilities Act, that the hotel failed to allow him to use the elevator while evacuating his fourth-floor room in response to the fire alarm, and that the hotel otherwise failed to provide him with a room compliant with the Americans with Disabilities Act.

Having recently become blind, Mr. Jones qualifies as disabled under the Americans with Disabilities Act ("ADA").  In March 2015,

1

Mr. Jones, who lives in Cincinnati, Ohio, was a guest at the Candlewood Suites of Slidell Northshore along with his sister and disabled mother. The defendants -- My Investments LLC of MS, My Hospitality Service LLC, and Southern Hospitality Underwriters, Inc. -- are the owners, operators, and insurers of the hotel.[1]

Mr. Jones alleges he had reserved a handicap-accessible/ADA room based on his disability, but that he was provided with a room on the fourth-floor of the building at the end of the hallway; he was later told this room was not actually an ADA compliant room. After checking into the hotel, because Mr. Jones needed to use the bathroom, he was the first to enter the hotel room. Mr. Jones alleges that he tripped and fell over a shower stool that had been left in the middle of the bathroom floor. As he attempted to get up, Mr. Jones slipped a second time and was rushed to the hospital by ambulance.

Mr. Jones and his family returned to the hotel from the hospital late in the evening. Shortly thereafter, the hotel's fire alarm sounded, rendering the elevators inoperable. Mr. Jones's sister rushed down four flights of stairs to seek the assistance of the front desk in getting Mr. Jones and their disabled mother down from their fourth-floor room. It is alleged that both Mr. Jones and his mother had difficulty navigating the stairs in the panicked

---

[1] The factual summary is taken from the plaintiff's complaint.

situation.[2] The hotel provided no assistance to Mr. Jones or his mother. Mr. Jones's sister was told by hotel staff that the elevators could not be used; the front desk manager later told his sister "I don't know what to tell you, I'm sorry for inconveniencing your life."

On March 4, 2016, Denver Jones sued My Investments LLC of MS, My Hospitality Service LLC, and Southern Hospitality Underwriters Inc., seeking declaratory and injunctive relief as well as attorney's fees pursuant to Title III of the ADA. Mr. Jones alleges that he would like to visit the hotel again once the stool and elevator barriers have been removed and additionally intends to serve as an ADA tester of the hotel. Mr. Jones alleges that the hotel failed to provide him with an easily accessible room and did not properly review the room before plaintiff's arrival or otherwise warn plaintiff about the shower stool. The plaintiff also alleges that the defendants concede that his room was not in fact ADA accessible, and that the defendants failed to properly reserve its ADA rooms for people who are actually disabled. Furthermore, the plaintiff alleges that the defendants failed to have proper emergency evacuation procedures and trained staff in place to assist those with disabilities and that the hotel did not

---

[2] Although it is alleged that Mr. Jones's sister learned that the alarm had been a false one, it is also alleged that the alarm was indeed the legitimate result of a fire in one of the hotel rooms.

adequately provide the auxiliary aid of having information printed in Braille.  Finally, the plaintiff advances a state law tort claim in which he alleges that his trip and fall accident was the result of the defendants' negligence.

My Investments LLC of Mississippi now seeks to dismiss the plaintiff's complaint for lack of subject matter jurisdiction or, alternatively, for failure to state a claim for relief.

                              I.
                              *A.*

A claim must be dismissed if it appears that the court does not possess subject matter jurisdiction. FED.R.CIV.P. 12(b)(1), (h)(3). "When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.'" Crenshaw-Logal v. City of Abilene, Tex., 436 Fed.Appx. 306, 308 (5th Cir. 2011) (quoting Ramming v. U.S., 281 F.3d 158, 161 (5th Cir.2001)).  The burden of proof on a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  When deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, it is well established that a court is not limited to the allegations in the complaint but may consider material outside of the complaint.  The Court may base its decision on the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the

4

complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. Ramming, 281 F.3d at 161.

*B.*

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing FED.R.CIV.P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" See Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). But, in deciding whether dismissal is warranted, the Court will not accept

conclusory allegations in the complaint as true. Kaiser, 677 F.2d at 1050. Indeed, the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth. Iqbal, 556 U.S. at 678-79. A corollary: legal conclusions "must be supported by factual allegations." Id. at 678. Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id. at 679.

## II.
### A.

Standing is an absolute prerequisite for federal jurisdiction, and without standing a plaintiff's claim may not proceed. N.A.A.C.P. v. City of Kyle, Tex., 626 F.3d 233, 237 (5th Cir. 2010); Ass'n of Cmty. Organizations for Reform Now v. Fowler, 178 F.3d 350, 356 (5th Cir. 1999). For a plaintiff to establish standing, three elements must be met. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)(internal citations and quotations omitted). First, the plaintiff must have suffered an injury in fact constituting an invasion of a legally protected interest that is both concrete and particularized, and actual or imminent, rather than conjectural or hypothetical. Id. Second, the alleged injury has to be fairly traceable to the challenged action of the defendant, rather than the result of the independent action of some third party not before the court. Id. Third, it must be likely, rather than speculative, that the injury will be redressed

by a favorable decision. Id.  A plaintiff seeking injunctive relief bears the additional burden of establishing a "real or immediate threat that the plaintiff will be wronged" in the future (City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)), but, in some instances in which a plaintiff seeks prospective relief, deterrence may constitute an injury in fact sufficient to confer standing. See Friends of the Earth, Inc. v. Laidlaw Enviro. Serv. (TOC), Inc., 528 U.S. 167, 184 (2000).

The Supreme Court has not directly applied the standing doctrine to suits brought under Title III of the ADA.  Notably, however, in determining whether an ADA plaintiff has standing, some courts embrace a broader conception of injury -- beyond the injury suffered by the direct interaction with architectural barriers -- in endorsing the "deterrent effect" doctrine; that is, some courts have held that the deterrent effect of discriminatory conditions is an ongoing injury sufficient to confer standing.  For example, in Pickern v. Holiday Quality Foods, Inc., the Ninth Circuit held that, "under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury," and "[s]o long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues."  293 F.3d 1133, 1136-37 (9th Cir. 2002); see

also <u>Doran v. 7-Eleven</u>, 524 F.3d 1034, 1039 (9th Cir. 2008)(noting that "[t]he Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act'"); <u>see also Disabled Americans for Equal Access, Inc. v. Ferries Del Caribe, Inc.</u>, 405 F.3d 60, 64 (1st Cir. 2005). Similarly, in the Title II context, the Fifth Circuit has observed that "a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that [the inaccessible object or place] affects his activities in some concrete way." <u>See Frame v. City of Arlington</u>, 657 F.3d 215, 236 and n.104 (5th Cir. 2011)(citing with approval <u>Pickern</u> and <u>Ferries Del Caribe</u>). This broader conception of injury in fact in the ADA context is consistent with the express language of the ADA. <u>See Steger v. Franco</u>, 228 F.3d 889, 892 (8th Cir. 2000)(citing 42 U.S.C. § 12188(a)(1), which states "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with the provisions.").

*B.*

Considering only the plaintiff's complaint, which constitutes the entire record, the Court finds that the plaintiff fails to advance allegations sufficient to support a finding that the

8

plaintiff has standing to bring suit under the ADA. Because the Court finds it appropriate to dismiss plaintiff's federal claims without prejudice for lack of subject matter jurisdiction, the Court declines to exercise supplemental jurisdiction over plaintiff's state-law negligence claim and therefore will dismiss this entire lawsuit without prejudice.

Defendant My Investments LLC of Mississippi contends that Mr. Jones lacks standing to bring ADA claims because there is no indication beyond speculation that he intends to return to the Candlewood Suites and because there is no allegation or evidence that structural barriers still exist such that he is deterred from visiting the hotel. The Court agrees.

The Court cannot conclude from the plaintiff's complaint that he faces a "real or immediate threat that [he] will be wronged" in the future, nor that he is necessarily deterred from returning to the hotel based on the alleged violations. City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); see also Frame v. City of Arlington, 657 F.3d 215, 236 (5th Cir. 2011); Betancourt v. Federated Dep't Stores, 732 F.Supp.2d 693 (W.D. Tex. 2010). While the facts of the case are certainly unsettling, the complaint's allegations, without more, do not permit a reasonable inference that the defendants' alleged wrongful conduct was anything more than an isolated and temporary instance of poor oversight of the hotel, including its ability to provide ADA compliant rooms. The

9

essence of plaintiff's ADA claim is that the hotel failed to provide him with a ground-floor, accessible room (notwithstanding his reservation for such a room), and that the defendants failed to take appropriate measures to ensure that plaintiff's non-compliant room would not pose a risk to Mr. Jones.  In other words, had the defendants placed the plaintiff in an ADA compliant room, he would not have tripped on the shower stool and would not have had difficulty evacuating the hotel during the fire alarm.

Invoking other district court cases finding standing in the ADA context, Mr. Jones contends that Article III standing is established because he is deterred from returning to the hotel. See Gilkerson v. Chasewood Bank, 1 F.Supp.3d 570 (S.D. Tex. 2014); Kramer v. Lakehills S., Civ. A. No. 13-591, 2014 WL 51153 (W.D. Tex. Jan. 7, 2014); Betancourt, 732 F.Supp.2d at 705. Indeed, the Fifth Circuit has made clear enough that "a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that [the architectural barrier] actually affects his activities in some concrete way." Frame, 657 F.3d at 236. But even under the broader deterrence analysis advocated by the plaintiff, the Court cannot determine from the plaintiff's allegations (all that is offered here) that such deterrence exists in this case.

In each of the cases cited by plaintiff, the complained-of architectural barrier was clearly permanent in nature, leaving

10

little doubt that the alleged barriers deterred future visits by the plaintiffs. See Gilkerson, 1 F.Supp.3d at 572 (ATM machine lacked voice guidance and universal tactile key pad); Betancourt, 732 F.Supp.2d at 697 (department store contained barriers to parking, accessing goods, and restrooms); Kramer, 2014 WL 51153 (same); see also Greer v. Richardson Indep. Sch. Dist., 752 F.Supp.2d 746 (N.D.Tex. 2010)(stadium bleachers lacked accessible handicapped seating).  Unlike those cases, the alleged violations in this case are not clearly permanent in nature and instead center on the unavailability of a room to accommodate plaintiff's disability on the particular, single instance of plaintiff visiting the hotel.  The Court cannot reasonably infer from the record that the alleged ADA violations are likely to persist, much less that it would be futile for plaintiff to return.  Absent alleged facts or record evidence suggesting that the alleged discriminatory barriers remain in place, the risk of injury in fact is speculative and the Court finds that the plaintiff lacks standing to bring his ADA claims.

C.

Having determined that Mr. Jones lacks standing to pursue his ADA claims, the Court must also determine whether it must exercise jurisdiction over plaintiff's state-law negligence claim. Given that the complaint does not allege that the amount in controversy exceeds $75,000, nor does it provide any facts supporting an

11

inference that plaintiff's damages could exceed $75,000, it is apparent that the Court may not properly exercise diversity jurisdiction. See 28 U.S.C. § 1332(a). Instead, the only basis for jurisdiction invoked by the plaintiff is supplemental jurisdiction under 28 U.S.C. § 1367. To be sure, this Court has the discretion to exercise supplemental jurisdiction over any claims that are so related to claims in an action subject to the Court's original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). If, however, as here, all federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over any remaining claims outside of its original jurisdiction. 28 U.S.C. § 1367(c).

Accordingly, for the foregoing reasons, the defendant's motion to dismiss is GRANTED and the case is hereby dismissed without prejudice to seek state court relief, if any.

New Orleans, Louisiana, August 3, 2016

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE